Argued June 3, affirmed June 28, 1921.

## LOGAN ET AL. *v.* CROSS.

(198 Pac. 1097.)

**Sales—Delivery of Hay in Stack Without Segregation—Buyer Could Replevin.**

1. Where one purchased and paid for a certain number of tons of hay out of a certain stack, segregation of such amount of hay from the stack was not necessary to an actual delivery thereof, and purchaser could bring action in replevin to recover the same.

**Replevin—Verdict in Replevin Action Held Definite and Certain, Though Value was not Given.**

2. In replevin to recover a specific amount of hay out of a stack, where complaint alleged that defendant was in unlawful possession thereof and that it was of the value of $535, and answer alleged that defendant was the owner of such hay which was of the value of $535, a verdict finding that plaintiffs were the owners and entitled to the possession of such amount of hay was both definite and certain as to the amount and value of the hay, although it did not state the value thereof, and there was no prejudicial error.

**Costs—Prevailing Party Only Entitled to Witness Fees for Day of Trial.**

3. Although a case was at issue on March 8th, the first day of the term, and was not set down for trial until March 17th, plaintiffs were not entitled to *per diem* witness fees of 11 days, although witnesses were under subpoena in attendance upon court during such time; no party to a lawsuit being entitled to costs for witnesses who were in attendance upon the court before the case was set down for trial.

From Crook: T. E. J. DUFFY, Judge.

Department 2.

The plaintiffs are brothers and engaged in the stock business in Crook County. The defendant is the owner of a hay ranch near Prineville. In June, 1919, the plaintiffs entered into a written contract with the defendant for the purchase from him of 200 tons of hay in the stack at the agreed price of $20 per ton and at the time paid $500. In consideration thereof

---

1. When title passes to goods sold from mass, see note in 9 Ann. Cas. 26.

plaintiffs were to have certain pasture and feeding privileges on defendant's lands. At the time the contract was made the hay was growing in the field. A large portion of it was alfalfa, the third crop of which was cut some time in September and it was all to be stacked and fed on defendant's premises. The hay was put up in five different stacks at convenient places for feeding and stacks 1, 2, 3 and 4 were more or less mixed hay and stack 5 was all alfalfa. There was a driveway between stacks 4 and 5 and both were in the same inclosure. By the terms of the contract the hay was to be delivered and paid for November 1st. Desiring to obtain his money, the defendant asked the plaintiffs if they would be willing to have the hay measured and pay for it in September, to which they agreed and during that month stacks 1, 2, 3 and 4 were measured and the balance of $4,000 was then paid. In checking up the measurements, it was found that there were not 200 tons of hay in the four stacks but the parties could not and never did agree upon the amount of the shortage. The original measurement of the stacks was made by the defendant and one of the plaintiffs, and by mutual agreement the figures were submitted to Baldwin, a Prineville banker, for computation as to the number of tons and it seems that he made an error and rendered different statements of the amount. It was agreed that there was an actual shortage, the plaintiffs claiming it was about seven tons and the defendant about four. Plaintiffs claim that this resulted in an agreement that they should have a sufficient amount of hay out of stack 5 to make good the 200 tons. In making the September measurement, the initial end of the rope of line was held by one of the plaintiffs and the other end by the defendant, who called off and reported the

actual length and breadth and "overs" of the four
different stacks and it was the measurements which
the defendant reported that were submitted to Bald-
win, the banker.   In the course of time the plaintiffs
became suspicious that the defendant had committed
a fraud upon them and other measurements were
made, from which it appeared there was an actual
shortage of 21.4 tons.   Claiming that they own and
should have that amount of hay in stack 5 and its
possession, plaintiffs commenced this action, in which
they allege that on November 1, 1919, they were and
are now the owners of and entitled to the possession
of 21.4 tons of alfalfa hay in the stack on the defend-
ant's place, commonly known as the Hoffman ranch
in Crook County, State of Oregon; that the defendant
wrongfully took and now withholds possession of the
hay in Crook County to plaintiffs' damage in the sum
of $535; that demand has been made and possession
refused.   For answer the defendant denies every alle-
gation of the complaint, and in the first further and
separate answer alleges that on November 1, 1919,
he was and is now the owner and in the possession
of the 21.4 tons of alfalfa hay in the stack, "which
said hay was and still is of the value of $535," and
as a plea in abatement, bar and estoppel, the defend-
ant further alleges that the plaintiffs had never filed
any certificate of the firm name or style; that by
reason thereof they are not entitled to maintain this
action.   The reply is a general denial.   After the tes-
timony was taken, defendant moved for a nonsuit
which was denied and the jury returned the following
verdict:

"We, the jury impaneled and sworn to try the
above-entitled cause find for the plaintiffs, and that
the plaintiffs are the owners of and entitled to the
possession of 21.4 tons of alfalfa hay as described

in the complaint, and in case the delivery of the said hay cannot be had, then that plaintiffs have judgment against the defendant for the sum of five hundred thirty-five ($535) dollars."

On March 18th judgment was entered on the verdict and on March 31st the defendant filed a motion to set it aside and for a new trial, upon the grounds that the complaint does not state facts sufficient to constitute a cause of action; that there is no evidence to support the verdict and errors in law occurring at the trial, to which exceptions were duly taken. The defendant appeals and in the abstract of record makes 25 different assignments of error as to the admission of evidence; the failure to strike out certain testimony; the overruling of the motion for a nonsuit; in the giving of certain instructions; in refusing to accept the original verdict of the jury and in accepting the verdict which was finally rendered. After the entry of judgment, plaintiffs filed a cost bill, claiming that they should have costs to the amount of $272.30, to which the defendant filed objections to the mileage and *per diem* of certain witnesses. The trial court sustained the objections and found that the plaintiffs were only entitled to $93.30, as costs, from which ruling the plaintiffs appeal, claiming that the court committed error in sustaining the objections.

AFFIRMED.

For appellant there was a brief over the name of *Mr. M. E. Brink,* with an oral argument by *Mr. N. G. Wallace.*

For respondents there was a brief over the name of *Mr. Willard H. Wirtz,* with an oral argument by *Mr. Jay H. Upton.*

JOHNS, J.—1. The June contract for the sale and purchase of the 200 tons of hay was executory but when the plaintiffs paid the defendant the full amount of the purchase price in September, the defendant then sold and plaintiffs bought and paid for 200 tons of hay and it then became an executed contract and was an actual sale and purchase. The defendant admits that there was an actual sale and delivery of all the hay in stacks 1, 2, 3 and 4, and that there were not 200 tons in those four stacks. The testimony is conclusive that the parties never did agree upon the amount of the shortage and for that reason they could not agree upon a final settlement. The plaintiffs claim and the defendant admits that they bought and paid for 200 tons of hay. The defendant also admits that the full amount of 200 tons of hay was not in the four stacks at the time the final payment was made in September. The plaintiffs contend that they wanted and insisted upon the full amount of the hay, that it was then agreed that they should have the amount of the shortage out of stack 5 and that through the agreement they became the owners of enough hay in stack 5 to make good the shortage; in other words, that the defendant not only sold and delivered to them the amount of hay in the four stacks but that he also then sold and delivered to them a sufficient amount of hay in and out of stack 5 to make the full 200 tons. The defendant denies this and upon that point there is a sharp conflict in the evidence but the fact remains and the defendant admits that the plaintiffs did buy and pay for 200 tons of hay and that there was a shortage. If only the four stacks were delivered the plaintiffs did not get the amount of hay they bought and for which they paid. Under the terms of the contract the hay was to be fed on

the premises where it was stacked and the plaintiffs were to have the use of the meadow and a large number of their cattle were in the pasture. It is significant that the hay in stack 5 which was the last and third cutting of the alfalfa was stacked within twenty feet of stack 4 which the defendant admits was sold and delivered to the plaintiffs, and there was a driveway between the two stacks. The jury found and the testimony tends to show that there was fraud in the original measurements and that the four stacks were short in both breadth and length and that it was the defendant who made the errors or committed the fraud. There is ample evidence in the record from which a jury could find that the defendant sold and made a symbolical delivery to the plaintiffs of enough hay from and out of stack 5 to make good the shortage in the four stacks and complete the full amount of the purchase. The defendant contends that there was no actual delivery or segregation of the hay which the plaintiffs were to receive out of stack 5; that as to such portion the sale was never completed, and that for such reason replevin does not lie. That is to say, that because the plaintiffs may have been the owners of a portion only of the hay in stack 5 and that because their portion could not be segregated or identified they cannot maintain replevin for the hay in stack 5. The testimony shows that all of the hay in that stack was alfalfa. In Wells on Replevin, page 174, Section 205, it is said:

"But in cases like the preceding, where the goods mixed are of the same kind, though not capable of separation by identification, yet if a separation and delivery can be made of the proper quantity without injuriously affecting the remainder, each may claim his share from the general mass, and may employ this action to secure it," meaning an action in replevin.

In Ruling Case Law, Volume 23, page 862, Section 11, it is said:

"The general rule is well settled that replevin can be maintained only for specific property capable of identification and delivery, and will not lie for an undivided interest in personal property. An exception to this rule, however, is made by some authorities where the property sought to be replevined consists of a part of a large mass of the same nature and quality, such as wheat in an elevator, corn in a crib, etc., easily divisible into aliquot parts. And the rule quite generally followed is that as to articles like wheat and the cereal grains, and the flour manufactured from them, wine, oil, and fruits of the earth which are sold, not by a description which refers to and distinguishes the particular thing, but in quantities which are ascertained by weight, measure or count, and which are undistinguishable from each other by any physical difference in size, shape, texture or quality, there may be different owners of a common mass, each having a separate property in his share, and each entitled to sever it from the share or shares of the others, and if necessary for the preservation of his rights, to maintain replevin for the same, subject to deductions for any loss or waste properly falling to his share while the property remained in mass. So one who has the ownership of the entire mass may recover a portion thereof."

On principle, hay in the stack would come within the exception. Among others, the court gave the following instructions:

"The plaintiffs must further prove by a preponderance of the testimony that the hay claimed by plaintiffs, or some portion thereof, that is as to stack 5, was delivered to plaintiffs by defendant or pointed out or designated by defendant at some time prior to the filing of the complaint. * *

"The plaintiffs must prove that they were the owners and entitled to the immediate possession of the hay, and in that connection you must determine

whether a delivery of the 21 tons or any portion thereof was made to the plaintiff by the defendant prior to the bringing of this action. If you find from a preponderance of the testimony that there was no delivery, manual or otherwise, or by designation or the pointing out of the hay by the defendant, then the plaintiffs would not be entitled to recover, as there would be no specific hay upon which they could recover. There must be a designation of the hay, a pointing out of the hay by the defendant in order to segregate and set it apart so that a replevin action would lie.''

2. In the instant case the plaintiffs bought and paid for 200 tons of hay and it is admitted that there was an actual delivery of the hay in the four stacks and there is testimony tending to show that the defendant sold and delivered enough hay from and out of stack 5 to make the full amount of 200 tons, and the jury found that it took 21.4 tons additional hay to complete the contract. In the first instance the jury found a verdict that the plaintiffs were the owners and entitled to the possession of 21.4 tons of alfalfa hay and fixed its value at $428. The court refused to accept this verdict and after further deliberation the jury returned a verdict that the plaintiffs were the owners and entitled to the possession of that amount of hay and that ''in case the delivery of the said hay cannot be had, then that plaintiffs have judgment against the defendant for the sum of five hundred and thirty-five ($535) dollars.'' Appellants claim that the court erred in refusing to accept the original verdict and that the final verdict is not sound for the reason that the jury did not find the value of the hay. The complaint alleges that on November 1, 1919, the 21.4 tons of alfalfa hay was then and now is of the value of $535, and that by reason of the wrongful and unlawful possession thereof by the de-

fendant the plaintiffs have been damaged in the sum of $535. The answer alleges that on November 1, 1919, the defendant was then and is now the owner of the 21.4 tons of alfalfa hay in the stack, "which said hay was and still is of the value of five hundred thirty-five dollars." The jury found that the plaintiffs were the owners and entitled to the possession of the 21.4 tons of hay and the defendant claiming to be the owner of that amount of hay and also alleging that it had a value of $535, the verdict of the jury is both definite and certain as to the amount and value of the hay. After a careful examination of the record and appellant's numerous assignments of error on the admission of evidence, including the instructions of the court, we hold that there was no prejudicial error and that the defendant had a fair trial.

3. The cross-appeal of the plaintiffs is based upon the following facts: On the first day of the March term of the Circuit Court of Crook County for 1920, the cause was at issue upon the original complaint, and answer which was in the form of a general denial and all of the witnesses for the plaintiffs were under subpoena and present for the trial. After the case was at issue and on the first day of the term, plaintiffs asked and obtained leave to file an amended complaint which they did on March 13th, and on the 15th the answer was filed. On the 16th the case was set down for trial on the 17th, and during all of this time the plaintiffs' witnesses were under subpoena in attendance upon court. In their cost bill, the plaintiffs claimed *per diem* for their witnesses from March 8th. Upon the objections of the defendant the court allowed a *per diem* of two days only. The question involved is one of practice. Although the case was at issue on March 8th, the first day of the term, it does

not appear that it was set down for trial until March 17th. Plaintiffs claim that under the practice of the Circuit Court of that county they were required to have their witnesses present and in court on the first day of the term, otherwise they would not have been subpoenaed. It is not for this court to say what should or should not be the rules or practice of any trial court. Suffice it to say that much expense would be saved and trouble avoided if cases could be set down for trial in advance for a day certain, which seems to be the practice in many districts, but we do not know of any rule of law by which either party to a lawsuit is entitled to recover costs for witnesses who were in attendance upon the court before the case was set down for trial. Judgment is affirmed.

AFFIRMED.

BURNETT, C. J., and BEAN and HARRIS, JJ., concur.

---

Motion to dismiss appeal filed February 3, overruled March 9, submitted on briefs March 25, affirmed May 17, rehearing denied June 28, 1921.